# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LA RON MCKINLEY BEY,
also known as, Laron McKinley,
and all similarly situated WCI prisoners
in isolated Administrative Confinement,

        Plaintiff,

      -vs-                                               Case No. 16-CV-521

WILLIAM POLLARD, BRIAN FOSTER,
TONY MELI, JON E. LITSCHER,
CATHY JESS, DR. SCHMIDT,
BRIAN GREFF, PAUL LUDVIGSON,
CAPTAIN JOHN O'DONOVAN, CAPTAIN WESTRA,
CO CUNDY, JESSIE J. SCHNEIDER,
SHANE M. WALLER, JEREMY L. STANIEC,
JOSEPH BEAHM, JOHN DOES 1-10,
MS. BONIS, and JANE AND JOHN DOES,
sued as "ACRC Jane and John Does 1-10,"

        Defendants.

# SCREENING ORDER

The *pro se* plaintiff is incarcerated at Waupun Correctional Institution (WCI). He filed an amended complaint on behalf of all similarly situated prisoners in isolated Administrative Confinement at WCI, alleging that prolonged placement there violates inmates' rights under the United States Constitution. This matter comes before the court on the plaintiff's petition to proceed without prepayment of the filing fee (*in forma pauperis*), motion for preliminary injunction, motion to certify class, and

motion to appoint counsel. The plaintiff has been assessed and paid an initial partial filing fee of $6.19. *See* 28 U.S.C. § 1915(b)(1).

The Court shall screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of

the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be

- 3 -

supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the Court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

<u>Amended Complaint Allegations</u>

The plaintiff filed an amended complaint on May 2, 2016. (ECF No. 5.) He seeks to bring this class action on behalf of "present and future prisoners held by the defendants in supermax, long-term isolative Administrative Confinement ("AC") in the WCI Restrictive Housing Unit ("Seg Unit")[.]" (ECF No. 5 at 3 ¶ 2.) The plaintiff is suing: former WCI Warden William Pollard; WCI Warden Brian Foster; Security Director

- 4 -

Tony Meli; Wisconsin Department of Corrections ("DOC") Secretary Jon E. Litscher; DOC Director of Adult Institutions Cathy Jess; WCI Psychological Services Unit Supervisor Dr. Schmidt; former Program Corrections Supervisor Brian Greff; current Program Corrections Supervisor Paul Ludvigson; former Captain John O'Donovan; Captain Westra; Officer Cundy; Segregation Lieutenant Jessie J. Schneider; Segregation Lieutenant Shane M. Waller; Segregation Officer Jeremy L. Staniec; Segregation Officer Joseph Beahm; Segregation Officers John Does 1-10; Ms. Bonis; and ACRC Jane and John Does 1-10.

The amended complaint contains allegations on behalf of the plaintiff and also on behalf of several "putative class members." Those individuals are: Daniel McBride; Terrance Prude; Rayshun Woods; Luis Nieves; Shirell Watkins; and Lamar Larry. The plaintiff alleges that the defendants have held him and the other named class members in prolonged, supermax isolated administrative confinement at WCI for more than eight months each.

The plaintiff alleges that the defendants regularly expose them to an insidious classical conditioning procedure without their consent. The procedure relates to the manner in which meal trays are delivered to the plaintiffs in their cells. The procedure is dangerous because the prisoners

- 5 -

are vulnerable, and it toys with their personalities and emotions which can result in symptoms and illness associated with mental illness.

In addition, the plaintiff alleges that the long-term, supermax, isolated administrative conditions deprive them of basic human needs and put them at a substantial risk of serious mental injury, exacerbation of preexisting mental illnesses, medical problems, psychosocial impairments, and other disabilities.

The plaintiff alleges that he has been in administrative confinement for over twenty-five years and he has or is now experiencing the following "SHU Syndrome" symptoms:

> Persistent stress; irritability; occasional panic attacks; occasional depression; occasional emotional flatness – loss of ability to have feelings; mood swings; hopelessness; hostility; anger; outbursts of physical and verbal violence; poor concentration; impaired memory and verbal recall; occasional disorientation; hypersensitivity to noises; hyper-reactivity and hyper-susceptibility to stimuli; hyper-reactivity to stimuli/easily startled, etc.; occasional disorientation in time and space; recurrent and persistent ruminations of a vengeful character; suicide ideations; sleep problems; and mental and emotional anguishment.

(ECF No. 5 at 17 ¶ 24.) The plaintiff also alleges that as a direct result of his long-term isolative confinement, he was diagnosed with antisocial personality disorder and delusional disorder – persecutory type in July 2012. According to the plaintiff, his prolonged isolative confinement

- 6 -

deprives him of the capacity to function normally.

The plaintiff also alleges that the conditions in administrative confinement have had significant adverse effects on the other named class members. (ECF No. 5 at 18-22 ¶¶ 27-37.) Each defendant allegedly knew that:

> prolonged isolation and lack of meaningful social, environmental, and occupational stimulation is toxic to the health of prisoners with serious mental illness as McKinley Bey, McBride, and Nieves, inter alia, and can cause mental illness and psychosomatic and psychosocial harm and impairment to others such as Prude, Woods, Watkins, and Larry[.]

(ECF No. 5 at 22 ¶ 39.) In addition, he alleges that the defendants have:

> a long-standing practice of indefinite isolative administrative confinement of the seriously mentally ill through the device of mere perfunctory and sham 6 month reviews with a lack of a substantive and realistic brightline criterion for McKinley Bey, McBride, Nieves, inter alia, to meet for release with regard to their mental state and ability to conform.

(ECF No. 5 at 22 ¶ 40.)

For about four weeks in November 2015, following use of the conditioning feed procedure, defendant Beahm and John Does 1-10 subjected the plaintiff and others to a regime of aversive condition in the form of freezing showers. Beahm also subjected the plaintiff to regular implied death threats during this time.

- 7 -

After the plaintiff was diagnosed with a mental illness in July 2012, he was transferred from the Wisconsin Secure Program Facility to the WCI supermax segregation unit where defendant Waller immediately placed him in a sensory deprivation cell in an environment worse than Wisconsin Secure Program Facility, which exacerbated his illness. The plaintiff remained in mental anguish for 64 days, despite his complaints and requests to be moved.

The plaintiff alleges that his delusional disorder symptoms were purposely induced initially by action of the Wisconsin Secure Program Facility security officials, and followed up by the WCI security officials, using the conditioning procedure referenced above.

> In a continuing course of wrongful conduct via use of cc and other procedure upon McKinley Bey in the Seg and HSU units to subject him to aversive conditioning through various noxious and coercive tactics, primarily defendants Staniec, from about 7/5/12 to 3/8/13 and 6/20/13 to 12/10/13, and Waller, from about 7/11/12 to May 2013, and Schneider and Greff, from about 7/11/12 to April 2015, and incorporating every defendant and allegation set out at 5, above, from about 7/11/12 to the present, have each eiter participated in, caused, condoned, or turned a blind eye to, a regime of retaliation and abuse to cause the plaintiff mental and emotional harm. The various noxious and coercive tactics used are outlined in Ex. 1001.

(ECF No. 5 at 26-27 ¶ 47.)

The plaintiff claims that the defendants violated his, and class

members', rights under First, Eighth Amendment, and Fourteenth Amendments to the United States Consitution. He also references two criminal statute violations (18 U.S.C. §§ 241, 242) and unspecified provisions of Title 45 of the Code of Federal Regulations.

For relief, the plaintiff seeks a preliminary injunction, declaratory relief, and monetary damages.

## Discussion

The plaintiff's allegations implicate his constitutional rights. Specifically, he alleges violations of his rights under the First, Eighth, and Fourteenth Amendments. However, as explained below, the plaintiff may not proceed on a class action. Therefore, the Court will require him to file an amended complaint limited to his own allegations if he wants to proceed. The Court will address the requirements of an amended complaint at the end of this Screening Order.

## Motion for Class Certification

The plaintiff has filed a motion for class certification. (ECF No. 11.) He contends that he has satisfied the requirements of Federal of Civil Procedure 23(a) and 23(b) such that the Court may grant his motion. However, under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the class must be provided adequate representation. Because of this

requirement, courts have repeatedly declined to allow *pro se* prisoners to represent a class in a class action. *See Howard v. Pollard*, 814 F.3d 476, 478 (7th Cir. 2015); *see also, Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding that it would be plain error to permit imprisoned *pro se* litigant to represent his fellow inmates in a class action); *Caputo v. Fauver*, 800 F. Supp. 168, 169-70 (D. N.J. 1992) ("Every court that has considered the issue has held that a prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmates in a class action."); *see also Fymbo v. State Farm Fire and Casualty Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others."). Because the plaintiff is proceeding *pro se*, the Court will not certify a class action in this case.

<u>Motion for Preliminary Injunction</u>

The plaintiff has filed a motion for preliminary injunction. (ECF No. 7.) He contends that the plaintiffs will suffer irreparable harm if the injunction is not granted. The motion and supporting brief do not request any specific relief. Presumably, the plaintiff seeks the preliminary injunctive relief requested in the amended complaint. He seeks the following relief in the amended complaint:

1. A preliminary order prohibiting the defendants from

- 10 -

confining any plaintiff with a serious mental illness: MH2a, MH2b, etc., in supermax isolative AC or any prolonged nonpunitive or punitive condition of isolation compatible with solitary confinement. Prolonged is more than 30 days.

2. A preliminary order mandating the immediate release to a general-population setting all plaintiffs who have spent more than 10 years in AC.

3. A preliminary order prohibiting the defendants from using classical conditioning or any other coercive procedures upon the plaintiff as set out in this complaint.

4. A preliminary order prohibiting the defendants from housing the plaintiffs in the punitive AC conditions set out in this complaint.

5. A preliminary order mandating the defendants establish a Brightline Rule Criterion for AC prisoners to follow for projected release from AC.

6. A preliminary order mandating that defendants obtain, install, and maintain cameras throughout the Seg Unit that surveil and record in real time all areas used by staff and prisoners, except nonobservation cells, shower cubicles, strip search cages, the HSU room, and visitor booths.

7. A preliminary order mandating that all persons entering or exiting the RHU/Seg Unit be required to log-in/log-out: name, time, and date.

8. A preliminary order mandating the defendants establish a bona fide AC Program such as the Common Grounds Program (Ex. 1005) with a dignified path to release.

9. An order mandating that defendants establish a new Restricted Housing General Population (RHGP) to house AC prisoner in GP conditions where very prolonged AC will be severely limited and those so confined provided significantly

- 11 -

more time out-of-cell and to congregate.

(ECF No. 5 at 30-32 ¶¶ 1-9.)

To obtain preliminary injunctive relief, the plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) he will suffer irreparable harm without the injunction. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). If those three factors are shown, the Court must then balance the harm to each party and to the public interest from granting or denying the injunction. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

The plaintiff has not satisfied the first prong because his complaint focuses on a class action and he cannot proceed on a class action. The Court cannot evaluate the plaintiff's claims until he files an amended complaint limited to his own allegations and claims. The plaintiff has not demonstrated a likelihood of success on the merits. Therefore, the Court will deny his motion.

### Motion to Appoint Counsel

The plaintiff has filed a motion to appoint counsel. He states that he needs an attorney because he suffers from a mental illness.

In a civil case, the Court has discretion to decide whether to recruit

a lawyer for someone who cannot afford one. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a reasonable effort to hire private counsel on their own. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). After the plaintiff makes that reasonable attempt to hire counsel, the Court then must decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (citing *Pruitt*, 503 F.3d at 655). To decide that, the Court looks not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." *Id.*

The plaintiff states that he has attempted to find an attorney on his own. However, he is capable of proceeding without an attorney because all he has to do right now is file an amended complaint. The plaintiff's filings demonstrate that he is capable of filing an amended complaint. Therefore, the Court will deny the plaintiff's motion to appoint counsel.

## Conclusion

If the plaintiff wants to proceed, he must file an amended complaint curing the deficiencies in the original complaint as described herein. Such

- 13 -

amended complaint must be filed on or before **July 29, 2016**. Failure to file an amended complaint within this time period may result in dismissal of this action.

The amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056-57 (7th Cir. 1998). In *Duda*, the appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading[.]" *Id.* at 1057 (citation omitted). If an amended complaint is received, the Court will screen it pursuant to 28 U.S.C. § 1915A. The plaintiff should use the enclosed form complaint to file an amended complaint.

## ORDER

**IT IS THEREFORE ORDERED** that the plaintiff's motion for leave to proceed without prepayment of the filing fee (*in forma pauperis*) (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for preliminary injunction (ECF No. 7) is **DENIED**.

- 14 -

Case 2:16-cv-00521-WCG   Filed 06/30/16   Page 14 of 17   Document 18

**IT IS FURTHER ORDERED** that the plaintiff's motion to certify class (ECF No. 11) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to appoint counsel (ECF No. 13) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that on or before **July 29, 2016**, the plaintiff may file an amended pleading curing the defects in the original complaint as described herein.

**IT IS FURTHER ORDERED** that the Clerk's Office mail the plaintiff a prisoner complaint form.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prisoner trust account the $343.81 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that copies of this order be sent to the Warden of Waupun Correctional Institution.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if the plaintiff is no longer incarcerated at one of those institutions, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. As each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should also retain a personal copy of each document filed with the court.

The plaintiff is further advised that failure to make a timely

submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 30th day of June, 2016.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**